■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LINFORD SNYDER, Appellant. — Appeal from a judgment of the County Court of Ulster County (Battisti, Jr., J.), rendered January 13, 1982, upon a verdict convicting defendant of one count of the crime of criminally negligent homicide and two counts of the crime of operating a motor vehicle while under the influence of alcohol. On February 14, 1981, defendant attended a wedding and reception where he consumed a dinner and a number of alcoholic beverages over a four-hour period. He left the reception around midnight and drove north to a lighted intersection where a divided four-lane highway intersects from the west. Defendant, after stopping, turned left on this highway and proceeded up the wrong side of the road. His vehicle thereafter collided with another traveling in the opposite direction and the driver of that car died as a result of massive injuries. Defendant was indicted and, after a trial, convicted of criminally negligent homicide and two counts of operating a motor vehicle while under the influence of alcohol. This appeal ensued and defendant raises several issues urging reversal. The critical issue raised by defendant is the identity and integrity of the blood sample taken from defendant at the hospital. The record reveals that defendant was also injured in the accident sustaining a fractured nose, fractured knee cap and various lacerations. While at the hospital, he was arrested and the blood sample taken by the emergency room nurse who had received an unsealed test tube containing a preservative from a police officer. After taking the sample, the tube was returned to the officer who

inscribed his initials and the date on the tube's rubber stopper, sealed it with scotch tape and put it in a cardboard mailing container which he also sealed with scotch tape. He thereafter put the tube in his unlocked refrigerator at home where it remained until 8:00 P.M. the next night. He then turned it over to a detective who added a gummed seal to the container and placed it in his unlocked refrigerator where it remained until he turned it over to the State Police laboratory. A State Police toxicologist testified that when he received the sample, the outer seal had been broken but the tube itself was sealed with the scotch tape. He also testified that the sample contained .16 ethyl alcohol by weight. Furthermore, the record reveals no testimony that the sample was untouched by those with access to it nor any testimony as to who broke the outer seal and under what circumstances it was broken. The admission of fungible evidence such as a blood sample requires that the offering party establish "that it is the identical evidence and has not been tampered with" (*People v Julian,* 41 NY2d 340, 343). The fact that the evidence was or might have been accessible to others not called as witnesses casts suspicion on the integrity of the evidence (*People v Connelly,* 35 NY2d 171, 175). Applying these principles to the instant case compels us to conclude that it was error to receive the sample in evidence. We note at the outset that while there was testimony that at the scene defendant was incoherent, unsteady, shaking, pale and had glassy, bloodshot eyes, on cross-examination of one of the witnesses so testifying it was stated that she did not know defendant had suffered a broken knee cap. Another witness, a police officer, testifying to defendant's condition stated that some of the conditions evidenced by defendant were not unusual for one injured in an accident. There was other testimony by those that observed defendant shortly prior to the accident that they did not observe any of the conditions indicating intoxication and that defendant appeared normal. While this conflicting testimony presented questions of fact, the blood sample evidence then became most significant and crucial. When we consider that the tube was unsealed when given to the nurse and was kept in two households in unlocked refrigerators for two days and the seal had been broken on the cardboard box, together with the fact that there was no testimony as to the sufficiency or identity of the preservative, we conclude that cumulatively such circumstances rendered the evidence inadmissible. The admission of such evidence cannot be considered harmless and, therefore, the judgment must be reversed and a new trial ordered. Defendant also contends that the court erred in denying his motions to dismiss the three counts of the indictment at the end of the prosecution's case for failure to establish a prima facie case and for failure to establish guilt beyond a reasonable doubt. In light of our determination that the blood sample was improperly received, the second count of the indictment charging the operation of a motor vehicle while defendant had more than .10 of one per centum by weight of alcohol in his blood must be dismissed. Such count could only have been proven by means of a properly administered and admitted blood alcohol test pursuant to section 1194 of the Vehicle and Traffic Law. The remaining count charging driving while intoxicated does not require proof by chemical test. As to that count, the testimony of the various witnesses concerning defendant's actions and appearance raised questions of fact as to his intoxication for the jury to resolve. Consequently, the court properly denied the motion to dismiss. The same reasoning and conclusion applies to the charge of criminally negligent homicide. Having concluded that the judgment must be reversed and a new trial ordered, we need not now consider the remaining arguments advanced by defendant. Judgment reversed, on the law, the second count of the indictment dismissed, and a new trial ordered. Mahoney, P. J., Sweeney, Main, Casey and Weiss, JJ., concur.