[68 NE3d 70, 45 NYS3d 345]

The People of the State of New York, Appellant, v Brandon Warrington, Respondent.

Argued November 16, 2016; decided December 22, 2016

## APPEARANCES OF COUNSEL

*Kathleen B. Hogan, District Attorney*, Lake George (*Jason M. Carusone* and *Emilee B. Davenport* of counsel), for appellant.

*Paul J. Connolly*, Delmar, for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, and the case remitted to the Appellate Division for consideration of the facts and issues raised but not determined on appeal to that Court.

We agree with the People that the Appellate Division erred in concluding that the trial court was required to excuse prospective juror No. 383 for cause (*see* 130 AD3d 1368, 1371 [3d Dept 2015]). During voir dire, defense counsel asked prospective jurors whether "[a]nybody [had] a problem with the fact [that the case involved] the death of a five year old child." Prospective juror No. 123 responded that he could not be impartial given the circumstances of this case, which prompted defense counsel to inquire whether any other jurors had similar feelings. On further questioning by defense counsel, prospective juror No. 383 said, "It's a five year old. I feel the same. Adult [defendant]. I can't do it." After that response, defense counsel asked whether the prospective jurors could agree that "[t]he burden is for the People to prove beyond a reasonable doubt that [defendant] did do it."

All of the prospective jurors, including prospective juror No. 383, answered that query in the affirmative. All of the prospective jurors then responded in the negative to defense counsel's subsequent question whether "anybody ha[d] a problem with that," and the matter turned to the issue whether any prospective juror would "have a problem finding the defendant not guilty if [the People did not] meet their burden." Prospective juror No. 383 answered, "I don't know."

Defense counsel did not follow up with those jurors, but the trial court subsequently attempted to rehabilitate prospective juror No. 123 through an exchange in which the court asked prospective juror No. 123 a series of questions focusing on that juror's previously stated partiality related to the victim's age, which questions included the query whether he could "be [a] fair and impartial . . . juror in this case" despite the fact that it involved the death of a child, allegedly at the hands of an adult. That prospective juror responded that he "would try," and through additional questions the court was unable to elicit an unequivocal assurance of impartiality from him.

The court's examination of prospective juror No. 383 yielded a different response. Immediately after finishing its examination of prospective juror No. 123, the court turned to juror No. 383. At the outset of its examination of that prospective juror, the court stressed that, as it had done with prospective juror No. 123, it would explore the issue whether prospective juror No. 383 could be fair and impartial if seated for trial. Specifically, and significantly, the court began its questioning of prospective juror No. 383 with the point that it had the *same questions for [her]*" before initiating this exchange:

"THE COURT: . . . If the [People are] able to prove their case beyond a reasonable doubt, what would your fair and impartial verdict be?

"PROSPECTIVE JUROR NO. 383: Guilty if they prove it guilty.

"THE COURT: Okay. Now, let's say they bring in lots and lots of witnesses, lots of evidence, lots of DNA, lots of pictures and whatever, but you're not convinced beyond a reasonable doubt. Let's say you're pretty sure, I think maybe he did it but I have a reasonable doubt about this, then what does your verdict have to be?

"PROSPECTIVE JUROR NO. 383: I would have to

say not guilty, you know, if they can't do it to my satisfaction.

"THE COURT: Yes, exactly, and that's exactly the way it has to be. It's all up to your satisfaction. It has to be proved beyond a reasonable doubt as you see that and as I tell you what the law is. Would you have any problem with saying that the defendant is not guilty if they don't prove their case?

"PROSPECTIVE JUROR NO. 383: No, if [the prosecutor] doesn't have it, if she can't prove it."

After briefly questioning prospective juror No. 132 regarding his ability to follow an instruction given by the court at the end of trial, the court returned to prospective juror No. 383:

"THE COURT: . . . Would you follow the law at the end of the case and listen to what they have to say if somebody, if you think somebody lied about something, you don't have to believe anything they say. On the other hand, you don't have to not believe anything they say. You can believe the parts you think are true but not believe the parts you think are not?

"PROSPECTIVE JUROR NO. 383: I was just going to say I'll listen to what they have to say and then I'll draw my own conclusion.

"THE COURT: Okay. Then you'll follow the law as I instruct you at the end of the case.

"PROSPECTIVE JUROR NO. 383: Yes."

Afterwards, the court excused prospective juror No. 123 for cause. Although he agreed that prospective juror No. 383 "got rehabilitated," defense counsel moved to dismiss that venire person for cause. The court denied that application, and defense counsel exhausted his peremptory challenges in removing her from the jury pool.

"CPL 270.20 (1) (b) provides that a party may challenge a potential juror for cause if the juror 'has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial' " (*People v Harris*, 19 NY3d 679, 685 [2012]). To that end, this Court has "consistently held that 'a prospective juror whose statements raise a serious doubt regarding the ability to be impartial must be excused unless the juror states unequivocally on the record

that he or she can be fair and impartial' " (*Harris*, 19 NY3d at 685, quoting *People v Chambers*, 97 NY2d 417, 419 [2002]; *see People v Johnson*, 94 NY2d 600, 616 [2000]). Indeed,

> " 'when potential jurors themselves say they question or doubt they can be fair in the case, Trial Judges should either elicit some unequivocal assurance of their ability to be impartial when that is appropriate, or excuse the juror when that is appropriate,' since, in most cases, '[t]he worst the court will have done . . . is to have replaced one impartial juror with another impartial juror' " (*Harris*, 19 NY3d at 685, quoting *People v Johnson*, 17 NY3d 752, 753 [2011]).

As our precedent makes clear, a prospective juror must, first and foremost, in unequivocal terms, "expressly state that his [or her] prior state of mind concerning either the case or either of the parties will not influence [the] verdict" (*People v Biondo*, 41 NY2d 483, 485 [1977]; *see People v Blyden*, 55 NY2d 73, 78 [1982]; *see Johnson*, 94 NY2d at 612). This link between the juror's previously articulated bias or state of mind and the ability to render an impartial verdict must be evident, because the very point of the unequivocal assurance of impartiality is to "allow[ ] a juror to 'purge' a previous opinion . . . by expressly declaring that he [or she] will not be influenced by [that] prior opinion" (*People v Torpey*, 63 NY2d 361, 368 [1984]). Thus, "where [a] prospective juror[ ] unambiguously state[s] that, *despite preexisting opinions* that might indicate bias, [he or she] will decide the case impartially and based on the evidence, the trial court has discretion to deny the challenge for cause if it determines that the juror's promise to be impartial is credible" (*People v Arnold*, 96 NY2d 358, 363 [2001] [emphasis added]).

■ Under the circumstances of this case—including the trial court's direct reference to the questions it had asked of juror No. 123, which called to juror No. 383's attention her previously stated bias—the trial court did not abuse its discretion by denying defendant's for-cause challenge to the prospective juror based on her subsequent unequivocal assurances of impartiality (*see generally Arnold*, 96 NY2d at 362; *People v Williams*, 63 NY2d 882, 884-885 [1984]). Viewing prospective juror No. 383's statements in totality and in context (*see Johnson*, 94 NY2d at 615), her assurances to the court adequately expressed her ability and willingness to adhere to her obliga-

tion to acquit defendant if the evidence required her to do so and established that she would render an impartial verdict untainted by any aforementioned bias or sympathy. "[T]he CPL . . . does not require any particular expurgatory oath or 'talismanic' words" to resolve doubt about a potential juror's ability to be fair (*Arnold*, 96 NY2d at 362) and, here, the trial court had the discretion to deny defendant's for-cause challenge to the prospective juror (*see generally People v Williams*, 63 NY2d 882, 884-885 [1984]).

■ Operating under the theory that the Criminal Procedure Law allows us to consider alternative grounds for relief where, as here, an intermediate appellate court modifies or reverses a judgment of a criminal court, defendant advances four contentions of his own for our review on this appeal by the People. In that vein, defendant principally contends that the indictment should be dismissed because the evidence is legally insufficient to support the conviction.

However, to credit defendant's alternative challenge with respect to the legal sufficiency of the evidence, which was rejected by the Appellate Division (130 AD3d at 1372), would be to afford him relief beyond that provided by the Appellate Division. That is, if we credited his challenge to the legal sufficiency of the evidence, then defendant would be entitled not just to the new trial ordered by the Appellate Division, but also to the reduction of the top count against him (*see generally People v Prindle*, 16 NY3d 768, 769 [2011]; *People v Dlugash*, 41 NY2d 725, 737-738 [1977]). "Inasmuch as the relief [defendant] seeks . . . goes beyond mere affirmance of the Appellate Division order and thus constitutes a request for affirmative relief, . . . we are precluded from reviewing" his challenge to the legal sufficiency of the evidence (*People v Acosta*, 80 NY2d 665, 674 [1993]; *see People v Carpenito*, 80 NY2d 65, 68 n [1992]; *People v Gamble*, 70 NY2d 885, 886 [1987]; Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.35 at 308-309 [2009 ed]; Arthur Karger, Powers of the New York Court of Appeals § 21:12 at 786 [3d ed rev 2005]).

Although it rejected his contention with respect to the legal sufficiency of the evidence, the Appellate Division did not specifically address the balance of the alternative challenges defendant raised before the Appellate Division and reiterates before this Court. Consequently, the case should be remitted to the Appellate Division so that it may pass upon the facts and

those alternative contentions advanced by defendant for reversal (*see* CPL 470.40 [2] [b]).

Judges PIGOTT, RIVERA, ABDUS-SALAAM, STEIN, FAHEY and GARCIA concur; Chief Judge DIFIORE taking no part.

Order reversed and case remitted to the Appellate Division, Third Department, for consideration of the facts and issues raised but not determined on the appeal to that Court, in a memorandum.